Darias CRAVATT, Jr., Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–422.

Court of Criminal Appeals of Oklahoma.

Feb. 18, 1992.

Lisbeth L. McCarty, Asst. Appellate Indigent Defender, Patti Palmer, Chief Deputy Appellate Indigent Defender, Norman, for appellant.

Susan B. Loving, Atty. Gen., Susan Stewart Dickerson, A. Diane Hammons, Asst. Attys. Gen., Oklahoma City, for appellee.

Richard B. Stewart, Asst. U.S. Atty. Gen., Edward J. Shawaker, Jacques B. Gelin, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for U.S.

Bob Rabon, Kile, Rabon & Wolf, Hugo, for Choctaw Nation of Oklahoma and Chickasaw Nation.

## OPINION

LANE, Presiding Judge:

After a trial by jury, Darias Cravatt, Jr., Appellant, was convicted of Murder in the First Degree (21 O.S.1981, § 701.7) and of Larceny of an Automobile (21 O.S.1981, § 1720) in the District Court of Johnston County, Case No. CRF–85–73. In conjunction with the guilty verdict on the larceny charge, the jury recommended a sentence of twenty (20) years [1]. With respect to the murder conviction, the jury found that two aggravating circumstances outweighed the mitigating factors and recommended the death penalty after hearing testimony during the second stage of the trial. Sentence was entered accordingly and Appellant has now perfected his appeal.

James Burnett was killed on October 23, 1985. His body was discovered in a wooded area on property owned by Appellant's

---

1. No allegations of error are raised with regard to this conviction, thus, it will not be discussed in the body of this opinion.

parents. Burnett had been chopping wood pursuant to an arrangement with the senior Cravatts whereby he paid them for the amount of wood which he chopped and carried away. On at least two previous occasions, Appellant threatened Burnett to discontinue cutting the wood. Appellant's parents intervened the first time and again gave permission for the cutting. During another incident, he threatened Burnett with a pick axe handle. The next confrontation culminated in Burnett's murder and the theft of his truck.

Appellant's appeal of his conviction was at issue in this Court on June of 1987. The case was set for oral argument on February 13, 1990, however, on the day before the arguments were to occur, Appellant filed a motion with this Court, raising jurisdictional questions for the first time. Appellant claimed that the State had lacked jurisdiction under 18 U.S.C. § 1153 (1984), to prosecute Burnett's murder because the crime was committed by an Indian on "Indian Country" as defined by 18 U.S.C. § 1151 (1984)[2].

In response to Appellant's Motion, this Court stayed all further proceedings and requested that the parties brief the issues involved. In addition to briefs from Appellant and the State of Oklahoma, this Court also accepted briefs filed by the United States and the Choctaw Nation of Oklahoma and the Chickasaw Nation as Amicus Curiae. On June 13, 1990, the case was remanded to the District Court for evidentiary hearing for determination of the following issues:

1. The identity of the actual situs of the murder;

2. Whether the property, indisputably restricted at one time, fit the definition of Indian Country found in 18 U.S.C. § 1151(c) at the time of the murder.

3. If the trial court determined that the property where the murder occurred was not Indian Country, it was to determine whether the property could be classified as part of a "Dependant Indian Community" as defined by § 1151(b).

The parties presented evidence to the trial court on August 20–22, and September 7, 1990. Following the hearing, the Honorable Robert M. Highsmith, in an exceptionally thorough order, made the following determinations of fact:

1. "The murder of James Burnett occurred within the boundaries of the following described property:

The N/2 of NW/4, NE/4, SW/4 of Section 28, Township 1 South, Range 7 East, Johnston County, Oklahoma."

Findings of Fact and Conclusion of Law on Remand, October 10, 1990, p. 1.

2. "The land described above which was the location of this murder retains an undivided $1/7$[3] restricted allotment interest and $5/7$'s undivided restricted interest by deed restriction as property purchased by Defendant's now deceased father with restricted funds so that the restricted Indian title has not been entirely removed or extinguished and accordingly the property is found not to be exempted from the definition of Indian Country as set forth by Congress at 18 U.S.C. 1151(c)."

*Id.* at p. 2.

3. "The land upon which the murder occurred is not located within the boundaries of a Dependant Indian Community as defined by 18 U.S.C. § 1151(b)."

*Id.*

After reaching these conclusions concerning the necessary facts underlying the ultimate resolution of the issues presented, the trial court held that the property in question was "Indian Country" as defined by § 1151(c)[4] and that state

---

**2.** The conviction for larceny is not affected by the jurisdictional question in that larceny is not a crime enumerated under the provisions of the Major Crimes Act, 18 U.S.C.1984, § 1153 as falling under exclusively federal jurisdiction.

**3.** Upon stipulation by the parties, the trial court concluded that an undivided $6/7$th of the property was subject to either deed restriction or was part of a restricted allotment. Only an undivided $1/7$th interest was held as fee simple unrestricted property.

**4.** That section provides that Indian Country includes "all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

prosecution of the murder was preempted by the provisions of the Major Crimes Act, § 1153(a). In the final briefs submitted to this Court following the entry of the Order by the Trial Court, it is clear that the facts as determined by the district court are not in dispute [5], thus, we will adopt the findings as true for purposes of our consideration of this case. The question before us, then, is whether the trial court reached the proper conclusion of law, that being that the State was without jurisdiction to prosecute Appellant for this murder requiring reversal of the murder conviction and dismissal of the charge.

Although the United States and the State of Oklahoma are in agreement with the trial court's finding that the situs of the murder was "Indian Country," both urge us to find that the trial court's finding of federal preemption was in error. They do so, however, for different reasons. The United States asserts that "as a result of congressional enactments around the turn of the century, Oklahoma, not the United States, has exclusive criminal jurisdiction in Indian country within the former territory of the Five Civilized Tribes, and thus in this case." Second Supplemental Memorandum of the United States as Amicus Curiae, p. 3. This position has been previously argued by the United States in several other cases. The State, on the other hand, urges us to find that the present case should be treated differently because when title to property is only partially held under restriction as Indian property, "exceptional circumstances" result. We do not agree with either position and find that we must affirm the decision of the trial court.

Our conclusion is reached based on the clear language of sections 1151(c) and 1153(a). We find that the position urged by the United States is untenable in light of the unequivocal language of these two sections. The United States has continuously urged different judicial treatment for incidents involving members of the five civilized tribes notwithstanding the fact that there is no foundation for this position

in the statutes and that the idea has been previously rejected by the courts of this State.

The argument that Congress intended, without specifying, some sort of different treatment in cases involving a member of the Five Civilized Tribes or lands in Eastern Oklahoma, has been previously rejected by the Oklahoma Supreme Court in *May v. Seneca–Cayuga Tribe of Oklahoma,* 711 P.2d 77, 81 (Okl.1986) and by this Court in *State v. Klindt,* 782 P.2d 401 (Okl.Cr.1989). In *Klindt,* this Court rejected the State's argument that the land in Eastern Oklahoma, originally allotted to Indians prior to statehood, was exempted from the subsequent Congressional enactments which supplanted state jurisdiction on those properties. We recognized:

> Jurisdiction over Indian Country has been given to either the states or the federal government through statutes. The Act of August 15, 1953, Pub.L. No. 88–280, 67 Stat. 588 (1953) provided the states permission to assume criminal and civil jurisdiction over any "Indian Country" within the borders of the state. Under this public law, Oklahoma could have, without the consent of the affected Indians, assumed jurisdiction over any Indian Country in the state by constitutional amendment. Because of Title IV of the Civil Rights Act of 1968, 25 U.S.C. §§ 1321–1326 (1970), however the consent of the affected Indians is now required before a State is permitted to assume criminal and civil jurisdiction over "Indian Country...." The State of Oklahoma has never acted pursuant to Public Law 83–280 or Title IV of the Civil Rights Act to assume jurisdiction over the "Indian Country" within its borders."

Based on the State's failure to act in this regard, we held quite simply "the State of Oklahoma does not have jurisdiction over crimes committed by or against an Indian in Indian Country." The United States

---

**5.** In fact, the parties stipulated to most of the factual matters concerning the manner in which title to the property was held and to the classifi- cation of the people in the chain of title as "Indians."

proffers no new reason why this result should be changed.

The State's argument is likewise without merit. The State cites *California v. Cabazon Band of Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) and urges this Court to find that an "exceptional circumstance" allowing the state to assume jurisdiction exists due to the fact that the title to the property is "mixed," with an undivided ⁶⁄₇th interest being "Indian Country" and an undivided ⅐th having lost that designation. In *Cabazon*, the Supreme Court held that under "exceptional circumstances," a state may assume jurisdiction "over the on-reservation activities of tribal members" "in the absence of express congressional consent." We do not find this authority to be applicable to the present case.

In the present case, we are concerned with the prosecution of a crime committed by an Indian on restricted property, an area of jurisdiction wherein there are specific congressional prohibitions, unlike the *Cabazon* case which concerned state regulation of bingo games on a reservation. Additionally, the State offers no explanation of what the exceptional circumstances are in this case which would require action by the state. We are not persuaded that an exception to the rule of non-jurisdiction over criminal acts should be applied in this case.

■ In our view, at best, the state would have a claim to jurisdiction over only the ⅐th undivided interest in the property. We do not find that this small interest in the property is sufficient to justify State intervention in a matter which would otherwise be statutorily reserved for the federal government. There is a strong presumption that the sovereignty of Indian tribes and their people are to be afforded a high degree of protection from infringement by state governments. *May*, 711 P.2d at 84. There is an equally compelling presumption, arising from the United States Constitution, that the power to regulate and control Indians and their related properties resides with the federal government. U.S. Const. art. I, § 8, cl. 3. *See also Seneca–Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 712 (10th Cir.1989).

The crime in question here is murder, the prosecution of which the federal government has specifically reserved to the United States when that crime occurs in "Indian Country." While it is true that a state certainly has a strong interest in the enforcement of its punitive statutes and in the protection and safety of its citizens, given the State of Oklahoma's failure to act to obtain jurisdiction over areas of "Indian Country," we do not find that the State's interest, only marginally justified, outweighs the federal preemption in this case [6]. In the absence of a definitive attempt by the State of Oklahoma to assume jurisdiction over acts occurring on Indian Country, we cannot conclude that the State's small interest in this property is sufficient to overcome the primacy of the federal interest. The congressional intent to preserve federal jurisdiction over the prosecution of murders which occur on restricted Indian lands is demonstrably strong as is reflected by specific legislation in this regard. *See* 18 U.S.C. § 1153.

Based on the foregoing, we find that the state prosecution of Appellant for the murder of James Burnett was done without the appropriate jurisdiction. Accordingly, we are forced to VACATE Appellant's conviction for murder and REMAND the action to the District Court with orders to DISMISS the charge for lack of jurisdiction. Insofar as Appellant chose not to raise any allegations of error in his original appeal concerning his conviction for Larceny of an Automobile, that conviction is AFFIRMED.

LUMPKIN, V.P.J., and BRETT, PARKS and JOHNSON, JJ., concur.

---

**6.** We express no opinion as to whether or not a greater degree of unrestricted ownership would justify such an interest, finding only the ⅐th undivided interest is not sufficient to invoke state jurisdiction.