BENCH v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BENCH v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BENCH v. STATE
2021 OK CR 12
Case Number: PCD-2015-698
Decided: 05/06/2021
MILES STERLING BENCH, Petitioner v. STATE OF OKLAHOMA, Respondent.
Cite as: 2021 OK CR 12, __ __

 

 

OPINION GRANTING POST-CONVICTION RELIEF

LUMPKIN, JUDGE:[1]

¶1 Miles Sterling Bench was tried by jury and convicted of First Degree Murder in the District Court of Stephens County, Case No. CF-2012-172. In accordance with the jury's verdict, the Honorable G. Brent Russell sentenced Petitioner to death. Petitioner appealed his conviction in Case No. D-2015-462 and this Court denied relief. Bench v. State, 2018 OK CR 31, 431 P.3d 929. Petitioner sought post-conviction relief, filing the instant post-conviction application. Petitioner seeks post-conviction relief from this conviction and sentence, challenging the jurisdiction of Stephens County to try him for B.H.'s heinous murder at the Teepee Totem convenience store in Velma, Oklahoma.

¶2 In his first proposition, Petitioner claims the District Court of Stephens County lacked jurisdiction to try him. Petitioner argues he had some quantum of Indian blood and the murder occurred within the boundaries of the Chickasaw Nation.

¶3 Pursuant to McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), Petitioner's claim raises two separate questions: (a) his Indian status and (b) whether the crime occurred in Indian Country. Because these issues require fact-finding, we remanded this case to the District Court of Stephens County for an evidentiary hearing.

¶4 Recognizing the historical and specialized nature of this remand for evidentiary hearing, we requested the Attorney General and District Attorney work in coordination to effect uniformity and completeness in the hearing process. Upon Petitioner's presentation of prima facie evidence as to his legal status as an Indian and as to the location of the crime in Indian Country, the burden would shift to the State to prove it has subject matter jurisdiction. The District Court was ordered to: determine whether Petitioner has some Indian blood and is recognized as an Indian by a tribe or the federal government and determine whether the crime occurred in Indian Country. The District Court was directed to follow the analysis set out in McGirt to find (1) whether Congress established a reservation for the Chickasaw Nation, and (2) if so, whether Congress specifically erased those boundaries and disestablished the reservation. In so doing, the District Court was directed to consider any evidence the parties provided, including but not limited to treaties, statutes, maps, and/or testimony.

¶5 We also directed the District Court that in the event the parties agreed as to what the evidence would show with regard to the questions presented, the parties could enter into a written stipulation setting forth those facts upon which they agree and which answer the questions presented and provide the stipulation to the District Court. The District Court was also ordered to file written findings of facts and conclusions of law with this Court.

¶6 The Honorable G. Brent Russell, Associate District Judge, held an evidentiary hearing in this case, and Findings of Fact and Conclusions of Law from that hearing were timely filed with this Court. The record indicates that appearing before the District Court were attorneys from the office of the Attorney General of Oklahoma, the Stephens County District Attorney's Office, the Oklahoma Indigent Defense System and the Chickasaw Nation. Members of the victim's family were also present.

¶7 The District Court's Findings of Fact and Conclusions of Law set forth that the State of Oklahoma and Petitioner "stipulated that Petitioner, Miles Sterling Bench, has 1/64 Choctaw blood" and "was an enrolled member of the federally recognized Choctaw Nation at the time of the crime."

¶8 The Findings of Fact and Conclusions of Law further state, regarding whether the crime occurred in Indian Country, that the State of Oklahoma and Petitioner stipulated that the crime occurred "in Stephens County, Oklahoma, at the Teepee Totem gas station located at 407 North Main Street in Velma, Oklahoma" and "that the above --described address is within the historical geographic area of the Chickasaw Nation, as set forth in the 1855 and 1866 treaties between the Chickasaw Nation, the Choctaw Nation, and the United States." The Findings of Fact and Conclusions of Law also state that "the parties stipulated that if the Court determines that treaties established a reservation on behalf of the Chickasaw Nation that has not subsequently been disestablished, then the crime occurred within Indian Country as defined by 18 U.S.C. § 1151(a)."

¶9 In determining whether Congress established a reservation for the Chickasaw Nation, the District Court found:

3. The Indian Removal Act of 1830 authorized the President of the United States to cause so much of any territory belonging to the United States, west of the Mississippi River, to be divided into a suitable number of districts, for the reception of such tribes or nations of Indians who may choose to exchanges [sic] lands where they already resided.

4. Pursuant to the authority set out in the Indian Removal Act of 1830, the 1830 Treaty of Dancing Rabbit Creek was entered, in which the United States caused to be conveyed to the Choctaw Nation, "while they shall exist as a nation and live on it," certain lands described as "beginning near Fort Smith where the Arkansas boundary crosses the Arkansas River, running thence to the source of the Canadian fork; if in the limits of the United States, or to those limits; thence due south to Red River, and down Red River to the West boundary of the Territory of Arkansas; thence north along that line to the beginning."

5. Thereafter, in the 1837 Treaty of Doaksville, the Choctaw and Chickasaw Nations entered into an agreement whereby the Choctaw Nation granted the Chickasaw tribe a district within the lands granted under the 1830 Treaty of Dancing Rabbit Creek, to be held on the same terms previously enjoyed by the Choctaws, which was approved and confirmed by the President of the United States. The 1837 treaty made the provisions of the 1830 Treaty of Dancing Rabbit Creek applicable to the Chickasaw Nation.

6. Subsequently, in 1855, the Treaty of Washington modified the boundaries of the Chickasaw territory. The description outlined in the Treaty incorporated the lands upon which the subject crime occurred.

7. The Chickasaw Nation is a federally recognized Indian tribe that exercises authority pursuant to the Constitution of the Chickasaw Nation, and which has been approved by the Secretary of the Interior of the United States.

8. There is no evidence, presented by either party to the Court, that indicates that the above-described treaties have been nullified or modified in any way to reduce or ceded the lands described therein to the State of Oklahoma.

¶10 The District Court made Conclusions of Law as follows: that pursuant to the above treaties, "[t]he plain wording of the treaties discussed above clearly demonstrate [sic] that Congress established a reservation for the Chickasaw Nation." Further, regarding whether Congress specifically erased the boundaries or disestablished the Chickasaw Reservation, the District Court concluded: "[n]o evidence was presented to the Court to establish that Congress erased or disestablished the boundaries of the Chickasaw Nation" and "[a]ccordingly, the Court finds that Congress established a reservation for the Chickasaw Nation, and thereafter never specifically and explicitly erased and disestablished such reservation boundaries. Therefore, the Court finds that the subject crime occurred in Indian Country."

¶11 The District Court made additional Findings of Fact and Conclusions of Law. Specifically, the Court found that Petitioner's jurisdictional claim was procedurally barred because he did not raise it on direct appeal but only in his post-conviction application. The District Court relied upon the language in McGirt that its ruling was nothing new and recognizing that Oklahoma had been dealing with the jurisdictional issue as far back as 1989. The District Court also determined that McGirt mentioned Oklahoma's general rule that issues which could have been raised on direct appeal but were not are waived from further review.

¶12 Ultimately, the District Court concluded that Petitioner was an Indian and that the instant crime occurred in Indian Country, but that Petitioner's jurisdictional claim was barred pursuant to 22 O.S.2011, § 1089.

¶13 Both Petitioner and Respondent[2] filed response briefs addressing issues from the evidentiary hearing. Petitioner vehemently argues against the District Court's finding of procedural bar, citing this Court's Order Remanding for Evidentiary Hearing in Bosse v. State, Case No. PCD-2019-124 (Aug. 12, 2020). He also argues "there is nothing in the record before this Court (because nothing exists) that would show the Chickasaw Reservation has been disestablished." Petitioner further argues, "[t]his Court should grant Petitioner's application for post-conviction relief, and remand to the district court with instructions to vacate Petitioner's judgment and sentence in CF-12-172."

¶14 In its first supplemental brief, the State acknowledges the District Court accepted the parties' stipulations concerning Petitioner's status as an Indian. The State also acknowledges the District Court applied McGirt and found Congress did establish a Chickasaw Reservation and no evidence was presented that it had been disestablished.

¶15 The State focused its argument in its second supplemental brief on the District Court's finding that Petitioner's jurisdictional claim is procedurally barred. This Court addressed that specific argument recently in Bosse v. State, 2021 OK CR 3, __ P.3d __.[3] With regard to concurrent jurisdiction, after finding no support for the argument in the law, the Court held, "[a]bsent any law, compact, or treaty allowing for jurisdiction in state, federal or tribal courts, federal and tribal governments have jurisdiction over crimes committed by or against Indians in Indian Country." Id., 2021 OK CR 3, ¶ 28, __ P.3d at __. The Court also found no merit in the State's procedural bar argument, holding, "McGirt provides a previously unavailable legal basis for [the jurisdictional] claim. Subject-matter jurisdiction may-indeed, must-be raised at any time. No procedural bar applies, and this issue is properly before us." Id., 2021 OK CR 3, ¶ 22, __ P.3d at __, citing 22 O.S.[2011], §§ 1089(D)(8)(a), 1089(D)(9)(a).

¶16 The State requests that should this Court find Petitioner is entitled to relief based on the District Court's findings, this Court should stay any order reversing the conviction for thirty (30) days so the United States Attorney's Office for the Western District of Oklahoma can secure custody of Petitioner.

¶17 After thorough consideration of this proposition and the entire record before us, including the original post-conviction record, transcripts of the evidentiary hearing, and briefs of the parties, we find that under the law and the evidence relief is warranted. The State stipulated to Petitioner's status as an Indian, but presented no argument regarding the existence of the Chickasaw Reservation and whether it has been disestablished. This acquiescence has created a legal void in this Court's ability to adjudicate properly the facts underlying Petitioner's argument. This Court is left with only the District Court's Findings of Fact and Conclusions of Law to review for an abuse of discretion. An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. State v. Delso, 2013 OK CR 5, ¶ 5, 298 P.3d 1192, 1194.

¶18 Based upon the record before us, the District Court's Findings of Fact and Conclusions of Law regarding Petitioner's Indian status and the continued existence of a Chickasaw Reservation are supported by the evidence presented at the evidentiary hearing. We therefore find Petitioner has met his burden of establishing his status as an Indian, having 1/64 Choctaw blood quantum and being an enrolled member of the Choctaw Nation. We also find the District Court appropriately applied McGirt to determine that Congress did establish a Chickasaw Reservation and that no evidence was presented showing that Congress explicitly erased or disestablished the boundaries of the Chickasaw Nation. We further find the District Court abused its discretion in concluding Petitioner's jurisdictional claim is procedurally barred.

¶19 Petitioner is an Indian and this despicable crime occurred in Indian Country. The State of Oklahoma did not have jurisdiction to prosecute Petitioner. Petitioner's first proposition is granted.[4]

DECISION

 

¶20 The Judgment and Sentence of the District Court of Stephens County is REVERSED and the case is REMANDED with instructions to DISMISS. The MANDATE is STAYED for twenty (20) days from the delivery and filing of this decision.[5]

 

AN APPEAL FROM THE DISTRICT COURT OF STEPHENS COUNTY
THE HONORABLE G. BRENT RUSSELL,
ASSOCIATE DISTRICT JUDGE

 

 
 
 
 APPEARANCES AT EVIDENTIARY HEARING

 KRISTI CHRISTOPHER
 OKLAHOMA INDIGENT
 DEFENSE SYSTEM
 BOX 926
 NORMAN, OK 73O7O-926
 COUNSEL FOR PETITIONER

 JASON HICKS
 DISTRICT ATTORNEY
 101 S. 11TH STREET
 DUNCAN, OK 73533
 COUNSEL FOR RESPONDENT

 JENNIFER CRABB
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73015
 COUNSEL FOR RESPONDENT

 DEBRA GEE
 GENERAL COUNSEL AND EXECUTIVE OFFICER, LEGAL DIVISION, DEPARTMENT OF INTERIOR SERVICES FOR THE
 CHICKASAW NATION
 P.O. BOX 1548
 ADA, OK 74821
 COUNSEL FOR THE CHICKASAW TRIBE
 
 
 APPEARANCES ON APPEAL

 KRISTI CHRISTOPHER
 OKLAHOMA INDIGENT
 DEFENSE SYSTEM
 BOX 926
 NORMAN, OK 73O7O-926
 COUNSEL FOR PETITIONER

 MIKE HUNTER
 ATTORNEY GENERAL
 OF OKLAHOMA
 CAROLINE E.J. HUNT
 JENNIFER CRABB
 ASST. ATTORNEYS GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR RESPONDENT
 
 
 

 

OPINION BY: LUMPKIN, J. 
KUEHN, P.J..: Concur in Results
ROWLAND, V.P.J.: Specially Concur
LEWIS, J.: Concur in Results
HUDSON, J.: Specially Concur

FOOTNOTES

[1] As stated in my separate writing in Bosse v. State, 2021 OK CR 3, __ P.3d __ (Lumpkin, J., concurring in result), I am bound by my oath and adherence to the Federal-State relationship under the U.S. Constitution to apply the edict of the majority opinion in McGirt v. Oklahoma, 140 S. Ct. 2452 (2020). However, I continue to share the position of Chief Justice Roberts' dissent in McGirt, that at the time of Oklahoma Statehood in 1907, all parties accepted the fact that Indian reservations in the state had been disestablished and no longer existed.

[2] We grant Respondent's Motion to File Supplemental Brief.

[3] While the majority in McGirt alluded to the availability of procedural bars, Chief Justice Roberts correctly noted in his dissent at footnote 9 that subject matter jurisdiction is never waived under Oklahoma law. McGirt, 140 S. Ct. 2452, 2501 n.9 (2020) (Roberts, C.J., dissenting). See Wallace v. State, 1997 OK CR 18, ¶ 15, 935 P.2d 366, 372. While Art. 7 of the Oklahoma Constitution vests the district courts of Oklahoma with "unlimited original jurisdiction of all justiciable matters," the federal government has pre-empted the field as it relates to major crimes committed by or against Indians in Indian country.

[4] Because of our resolution of this proposition, the others raised in Petitioner's post-conviction application are moot.

[5] By withholding the issuance of the mandate for 20 days, the State's request for time to determine further prosecution is rendered moot.

 

 

KUEHN, PRESIDING JUDGE, CONCURRING IN RESULT:

¶1 I agree with the Majority that the State of Oklahoma had no jurisdiction to try Petitioner. This Court recently found that the Chickasaw Reservation was not disestablished and is Indian country. Bosse v. State, 2021 OK CR 3, ¶¶ 11-12. Oklahoma does not have jurisdiction to prosecute crimes committed by or against Indians in Indian Country. Bosse, 2021 OK CR 3, ¶ 28; 18 U.S.C. §§ 1152, 1153. Because this Court has already decided the issue of reservation status, I find the Majority's discussion of it dicta.

¶2 I recognize that this decision has immediate and painful consequences for the victim's family and the community where the crime occurred. The United States Supreme Court noted in McGirt that its decision could "unsettle" many criminal convictions, but concluded that this was not a sufficient reason to avoid applying the controlling law. McGirt v. Oklahoma, 591 U.S. __, 140 S.Ct. 2452, 2479-80. Ultimately, this is a correct statement of the law, by which this Court is bound. But this Court is first and foremost a court for the citizens of Oklahoma, and its members are citizens of Oklahoma as well. We see and understand the consequences of this decision in a way the United States Supreme Court cannot.

¶3 Strikingly, the Supreme Court did not mention the unsettling consequences for victims and their families when they have to relive a trial, and in the worst case, watch as neither the federal nor tribal governments can prosecute the offender. Even one conviction overturned with the offender released without much consequence for a crime is too many. I recognize and understand the confusion, frustration, and pain that comes with the inevitable consequences when we apply McGirt to the cases before us. If it were possible to avoid these consequences through my legal analysis, I would.

¶4 Native Americans have long awaited the statements of the McGirt ruling, but none celebrate a lack of justice for victims, victims who are often Native American. Logically, Tribal and Oklahoma citizens want to punish those who commit crimes and lessen stress and harm on victims and their families. Under the McGirt ruling, that is not always the case. Unfortunately, a remedy is not for this Court to prescribe under the McGirt precedent. The cure for the ailments caused by this decision must come quickly by the Tribes and others working together with humility and discernment, further legal rulings from the United States Supreme Court, or Congress exercising its authority. McGirt, 591 U.S. 2481--82.

¶5 I also cannot entirely agree with the Majority's characterization of the State's position below as "acquiescence." As I have said before, the State's decision to not take a position on reservation status was an available legal strategy and conserved judicial resources.[1] Hogner v. State, 2021 OK CR 4, ¶ 2 (Kuehn, P.J., concurring in result). And I repeat that there is no "void" in the record. Petitioner provided the trial court with maps, treaties, and statutes relevant to the jurisdictional issue. The State chose not to augment or contest this law and evidence. There was a complete record below and a full record on appeal. The trial court's findings and conclusions set forth the details of the evidence used to make its decisions. The State made a responsible choice entirely consistent with effective representation. Often, in a criminal trial, the defendant does not offer evidence to counter the evidence of guilt presented by the State. And yet, this Court routinely finds the evidence is sufficient for our review, without complaining that the defendant's choice leaves a void in the record. The same is true here.

FOOTNOTES

[1] This position is also entirely consistent with the State's position in civil Indian Child Welfare Act proceedings. On August 1, 2020, the Oklahoma Department of Human Services, on behalf of the State, entered into an Intergovernmental Agreement Between the State of Oklahoma and Each of the Five Tribes Regarding Jurisdiction Over Indian Children Within Each Tribe's Reservation (filed, Oklahoma Secretary of State, Aug. 1, 2020). Throughout the Agreement the State explicitly recognizes the continued existence of the Chickasaw Reservation.

 

 

ROWLAND, VICE PRESIDING JUDGE, SPECIALLY CONCURRING:

¶1 I agree with the majority that the U.S. Supreme Court's decision in McGirt v. Oklahoma, 591 U.S.___, 140 S.Ct. 2452 (2020), unfortunately, requires dismissing this murder conviction which resulted in a sentence of death. I write separately to comment on two issues.

¶2 First, I do not join in the view that the position the State has taken leaves a legal void or negatively affects the standard of review by which we are to judge this case. The State has agreed that Bench is an Indian for purposes of federal criminal law, and that the crime here took place on lands within the historical boundaries of the Chickasaw Nation. The State took no position as to whether those lands ever have or still do constitute a reservation, and offered no evidence or argument to rebut Bench's claim that a Chickasaw Reservation remains intact today. Clearly, the State is aware that the reasoning of McGirt, involving the Muscogee Creek Reservation, likely applies to the Chickasaw lands as well. The Court, in McGirt, found the existence of a Muscogee Creek Reservation in a large part of eastern Oklahoma, even though neither the tribe, local governmental units in that part of the state, nor the State of Oklahoma, had ever behaved since statehood as though they believed a reservation still existed. It seems to me the State is consistent in its long-held position, effectively standing mute and leaving it to the district court to expand McGirt to the Chickasaw lands. This is a reasonable position to take and one that litigants in criminal cases take from time to time.

¶3 Nor do I find that the State's position negatively affects our standard of review or ability to decide this case. Had the State taken the active position that no Chickasaw Reservation exists today, and had the district court nonetheless ruled against the State, we would still have that ruling in the district court's order to adjudicate.

¶4 The second issue I wish to address is that of subject matter jurisdiction. Today's Opinion Granting Post Conviction Relief mentions subject matter jurisdiction because that is the language we used to remand this case for findings of fact and law and in quoting Bosse v. Oklahoma, 2021 OK CR 3, ___ P.3d ___. As I set forth in detail in my separate writing to Bosse, Indian Country criminal jurisdiction does not implicate subject matter jurisdiction. The Major Crimes Act does not, indeed cannot, divest Oklahoma courts of subject matter jurisdiction granted by the Oklahoma Constitution and statutes enacted pursuant thereto. This federal criminal statute, based upon the plenary power of Congress to regulate affairs with Indian tribes, is instead an exercise of federal territorial jurisdiction which preempts the similar authority of Oklahoma state courts under these circumstances. The U.S. Supreme Court has never described jurisdiction under 18 U.S.C. § 1152 and 1153 as subject matter jurisdiction; few if any state high courts have so characterized it; and the Tenth Circuit Court of Appeals has explicitly stated that subject matter jurisdiction is not involved. United States v. Langford, 641 F.3d 1195, 1197 n.1 (10th Cir. 2011).

¶5 Because I concur with the legal reasoning contained in this Opinion, and with its outcome, I concur specially with the majority.

 

 

LEWIS, JUDGE, CONCURRING IN RESULTS:

¶1 I write separately to address the notion that McGirt v. Oklahoma, 140 S.Ct. 2452 (2020), addresses something less than subject matter jurisdiction over an Indian who commits a crime in Indian Country or over any person who commits a crime against an Indian in Indian Country. McGirt, of course, serves as the latest waypoint for our discussion on the treatment of criminal cases arising within the historic boundaries of Indian reservations which were granted by the United States Government many years ago. Id., 140 S.Ct. at 2460, 2480. The main issue in McGirt was whether those reservations were disestablished by legislative action at any point after being granted.[1]

 

¶2 McGirt deals specifically, and exclusively, with the boundaries of the reservation granted to the Muscogee (Creek) Nation. Id., 140 S.Ct. at 2459, 2479. However, the other Indian Nations comprising the Five Tribes have historical treaties with language indistinct from the treaty between the Muscogee (Creek) Nation and the federal government. Therefore, this case involving a crime occurring within the historical boundaries of the Chickasaw Nation Reservation must be analyzed in the same manner as the boundaries of the Muscogee (Creek) Nation Reservation. The District Court below conducted a thorough analysis and concluded that the reservation was not disestablished.[2] I agree with this conclusion. I disagree with the District Court's conclusion, as does this Court's Opinion, that the claim is somehow procedurally barred.

 

¶3 McGirt was also clear that if the reservation was not expressly disestablished by the United States Congress, Oklahoma has no right to prosecute Indians for crimes committed within the historical boundaries of the Indian reservations. Id., 140 S.Ct. at 2460. Therefore, because the Chickasaw Nation Reservation was not disestablished, the State of Oklahoma has no authority to prosecute Indians for crimes committed within the boundaries of the Chickasaw Nation Reservation as was the case here, nor does Oklahoma have jurisdiction over any person who commits a crime against an Indian within the boundaries of the Chickasaw Nation Reservation. The federal government has exclusive jurisdiction over those cases. 18 U.S.C. § 1153(a).

¶4 A lack of subject matter jurisdiction leaves a court without authority to adjudicate a matter. This Court has held that subject matter jurisdiction cannot be conferred by consent, nor can it be waived, and it may be raised at any time. Armstrong v. State, 1926 OK CR 259, 248 P. 877, 878; Cravatt v. State, 1992 OK CR 6, ¶ 7, 825 P.2d 277, 280. Magnan v. State, 2009 OK CR 16, ¶¶ 9, 12, 207 P.3d 397, 403 (holding that jurisdiction over major crimes in Indian Country is exclusively federal).

¶5 Because the issue in this case is one of subject matter jurisdiction, I concur that this case must be reversed and remanded with instructions to dismiss.

FOOTNOTES

[1] Despite my learned colleague's belief that Chief Justice Roberts's dissent correctly assesses the current existence of Indian reservations within the State of Oklahoma, McGirt sets the precedent that must be followed.

[2] The Opinion indicates that there is some "legal void" because the State acquiesced to the District Court's findings, thus we are limited to review for abuse of discretion. Where there is arbitrary or unreasonable action by a District Court, this Court has the power to intervene. Here, there simply is no evidence that Congress disestablished the Chickasaw Nation Reservation by clearly expressed intent as required by McGirt. Id., 140 S.Ct. at 2463; see Nebraska v. Parker, 136 S.Ct. 1072, 1079 (2016).

 

 

HUDSON, J., SPECIALLY CONCURRING:

¶1 Today's decision applies McGirt v. Oklahoma, 140 U.S. 2452 (2020) to the facts of this case and dismisses a first degree murder conviction that resulted in a death sentence from the District Court of Stephens County. I fully concur in the majority's opinion based on the stipulations below concerning Petitioner's Indian status and the location of this crime within the historic boundaries of the Chickasaw Reservation. Under McGirt, the State has no jurisdiction to prosecute Petitioner. Instead, Petitioner must be prosecuted in federal court. I therefore as a matter of stare decisis fully concur in today's decision. 

¶2 I also join Judge Rowland's observation in his special writing that the Major Crimes Act does not affect the State of Oklahoma's subject matter jurisdiction in criminal cases but, rather, involves the exercise of federal criminal jurisdiction to effectively preempt the exercise of similar state authority. Further, I maintain my previously expressed views on the significance of McGirt, its far-reaching impact on the criminal justice system in Oklahoma and the need for a practical solution by Congress. See Bosse, 2021 OK CR 3, __P.3d__ (Hudson, J., Concur in Results); Hogner v. State, 2021 OK CR 4, __P.3d__ (Hudson, J., Specially Concurs); and Krafft v. State, No. F-2018-340 (Okl.Cr., Feb. 25, 2021) (Hudson, J., Specially Concurs) (unpublished).

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2021 OK CR 21, STATE ex rel. DISTRICT ATTORNEY v. WALLACE
Cited


 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1992 OK CR 6, 825 P.2d 277, CRAVATT v. STATE
Discussed
 1926 OK CR 259, 248 P. 877, 35 Okl.Cr. 116, Armstrong v State
Discussed
 2009 OK CR 16, 207 P.3d 397, MAGNAN v. STATE
Discussed
 2013 OK CR 5, 298 P.3d 1192, STATE v. DELSO
Discussed
 2018 OK CR 31, 431 P.3d 929, BENCH v. STATE
Discussed
 2021 OK CR 3, 484 P.3d 286, BOSSE v. STATE
Discussed at Length
 2021 OK CR 4, HOGNER v. STATE
Discussed
 1997 OK CR 18, 935 P.2d 366, Wallace v. State
Discussed
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1089, Post-Conviction Relief for Death Penalty Conviction - Grounds for Appeal
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA