UNITED STATES of America

v.

**Jimmie Lee KENNEDY, Defendant.**

**Crim. Action No. 95–0198–LFO.**

United States District Court,
District of Columbia.

Jan. 16, 1997.

**6**

John Armon Beasley, Jr., Asst. U.S. Attorney, Washington, D.C., for U.S.

Mona Aisner, Washington, D.C., Shawn Moore, Washington, D.C., for defendant.

Stephen C. Leckar, Gnessin & Waldman, P.C., Washington, D.C., amicus.

### MEMORANDUM

OBERDORFER, Senior District Judge.

On January 15, 1997, defendant Jimmie Lee Kennedy was sentenced in open court to a term of life imprisonment pursuant to 18 U.S.C. § 3559(c). This Memorandum serves to confirm that sentence.

### I.

Kennedy was originally tried before Judge Robertson and convicted by a jury of Hobbs Act robbery and related weapons and assault charges. He was convicted for holding up, on two separate occasions, the same Roy Rogers restaurant. After trial, Judge Robertson recused himself, and the case was transferred here for sentencing. In accordance with the "three-strikes" statute, 18 U.S.C. § 3559, the Presentence Investigation Report (prepared by Probation Officer Gennine A. Hagar) recommended that Kennedy be sentenced to a term of life imprisonment. Although Kennedy proffered numerous arguments in opposition, none of them were meritorious.

### II.

First, Kennedy contended that the Government did not provide him with sufficient pretrial notice of the fact that he faced a possible life sentence. In support of this claim,

Kennedy relied on the notice requirements contained in both the three-strikes statute and the Due Process Clause of the Fifth Amendment.

The record indicates that on August 10, 1995, prior to trial, the Government filed an information giving notice that it would seek a sentence of life imprisonment pursuant to the three-strikes statute. The government information alleged that Kennedy had been previously convicted of two serious violent felonies. According to the Government, a copy of that information was served via first-class mail on Kennedy's attorney, Mona Asiner. The information bears a certificate of service to that effect signed by an Assistant United States Attorney. At a presentence hearing held on June 21, 1996, two Assistant United States Attorneys testified under oath that they informed Asiner, both over the telephone and in writing, of the Government's intention to seek a life sentence.

Although Asiner claims that she never received the information in the mail, and Kennedy contends that he had no actual notice, the Government points out that, in addition to the foregoing, prior to trial, Judge Robertson twice mentioned the three-strikes information *in open court.* During a pretrial hearing on November 2, 1995, at which both Kennedy and Asiner were present, Judge Robertson stated, "[N]one of us is blind to the implications of this case. Mr. Kennedy's freedom, it's a Section 3559 case...." Tr. of 11/2/95, at 6. Later, Judge Robertson stated, "[T]his is a third strike case the government is bringing here." *Id.* at 18.

### A.

■ Under the three-strikes provision, the Government is required to serve a copy of the information "on the [defendant] or counsel for the [defendant]." *See* 18 U.S.C. § 3559 (incorporating by reference 21 U.S.C. § 851(a)). In this case, the Government satisfied that requirement by mailing a copy of the information to Asiner. Service was effected pursuant to Fed.R.Crim.P. 49(b), which incorporates by reference Fed.R.Civ.P. 5(b), and allows service to be made by mailing a copy "to the attorney ... at the attorney's ... last known address...." *See* Fed.

R.Crim.P. 49(b) (1994); *see also* Fed.R.Civ.P. 5(b) (1994). Moreover, since "[s]ervice by mail is complete upon mailing," *id.,* non-receipt generally does not affect the validity of service. This is particularly true where, as here, the evidence supports a finding, beyond a reasonable doubt, that Kennedy and his attorney also received actual notice from the prosecutors and in open court from the trial judge. Therefore, the Government will be deemed to have complied with the notice requirement of section 3559. *See United States v. White,* 980 F.2d 836, 840 n. 8 (2d Cir.1992) (service by mail found sufficient even where defense attorney did not receive three-strikes information until after jury selection).

### B.

Kennedy also contended that the Government failed to provide sufficient notice under the Due Process Clause of the Fifth Amendment, which allegedly requires service of the three-strikes information to be in open court and on the defendant, not the defendant's attorney. The Supreme Court has recognized that a criminal defendant has the right to be present during certain proceedings— "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge...." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (Cardozo, J.); *see id.* at 108, 54 S.Ct. at 333 ("[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence."); *see also Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985).

*Snyder* and its progeny are typically invoked where the defendant has been excluded from a particular *in-court* proceeding. Thus, the application of that line of cases here is slightly inapposite, since this case involves an essentially *out-of-court* filing. Nonetheless, due process may require that certain out-of-court procedures be re-created in open court in the presence of the defendant, such as where the filing of an indict-

ment is "re-enacted" at arraignment. *Cf. United States v. Reiter,* 897 F.2d 639, 642–44 (2d Cir.1990) (defendant entitled to arraignment on twelfth superseding indictment). The indictment analogy receives further support from the Supreme Court's decision in *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), where the Court ruled that a sentencing proceeding to determine habitual offender status is *distinct* from a defendant's underlying trial on guilt or innocence. *Id.* at 452, 82 S.Ct. at 503–04. Thus, to the extent that the filing of a three-strikes information is tantamount to the initiation of a "new" stage of criminal proceedings against the defendant, *Oyler* seems to indicate that such an event is sufficiently critical to entitle the defendant to an in-court "arraignment" on the information.

Even assuming that the Due Process Clause requires an "arraignment" on the three-strikes information, however, it is not so clear that such an event must occur *prior to trial,* rather than merely prior to sentencing. Due process is satisfied so long as there is "reasonable notice and an opportunity to be heard." *Id.* As the Supreme Court held in *Oyler,* "due process does *not* require that notice be given *prior to the trial* on the substantive offense." *Id.* (emphasis added); *see also United States v. Hardy,* 52 F.3d 147, 150 (7th Cir.) (due process does not require formal pretrial notice that defendant could be sentenced as armed career criminal), *cert. denied,* —— U.S. ——, 116 S.Ct. 207, 133 L.Ed.2d 140 (1995); *United States v. Craveiro,* 907 F.2d 260, 264–65 (1st Cir.) (same), *cert. denied,* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990).

Although *amicus curiae* proffered the policy argument that pretrial notice may be necessary so that the defendant will have sufficient time to plea bargain, the Due Process Clause does not appear to encompass this concern. As an initial matter, there is no constitutional right to plea bargain. *See Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846–47, 51 L.Ed.2d 30 (1977). Moreover, at least one Court of Appeals has expressly held that due process does *not* require the Government, after notifying a defendant of a possible enhanced sentence, to

provide him with sufficient time to negotiate a plea. *See Craviero,* 907 F.2d at 265.[1]

■ In any event, even accepting Kennedy's position that the Due Process Clause requires an "arraignment" on the three-strikes information prior to trial, the failure to do so in this case was harmless error. As Kennedy concedes, he suffered no prejudice from his alleged lack of pretrial notice since the Government asserts, and Kennedy does not contest, that the prosecutor was unwilling to plea bargain, and therefore, no possibility existed for negotiating a lower sentence. Moreover, as stated previously, the record suggests that Kennedy in fact received actual pretrial notice, through the comments of Judge Robertson at the November 2, 1995 motions hearing.

### III.

■ Prior to his sentencing date, Kennedy had contended that he was not the same "Jimmie Lee Kennedy" named in the Government's three-strikes information as having been convicted on two prior occasions of armed robbery. When the issue arose at sentencing, however, and the Government was prepared to introduce evidence consisting of prior conviction records and fingerprint cards, Kennedy conceded that he was in fact the same person named in the three-strikes information. Responding to an inquiry from the bench, based on 21 U.S.C. § 851(b),[2] as to whether he affirmed or denied his participation in the crimes listed in the information, Kennedy stated that he did not deny, and thereby affirmed, his two prior

armed robbery convictions. On the basis of that affirmance, and the evidence introduced by the Government, as well as the fact that Kennedy testified at trial and admitted that, in the 1970s, he had been convicted twice for armed bank robbery,[3] I found that the record established by a preponderance of the evidence—indeed, beyond a reasonable doubt—that Kennedy had been convicted on two prior occasions of armed robbery, and that these were "serious violent felonies" within the meaning of the three-strikes statute.

### IV.

The remaining arguments proffered by Kennedy under the Rule of Lenity and the Double Jeopardy Clause were without merit.

### V.

Accordingly, on January 15, 1997, as evidenced by the Judgment and Commitment Order, Kennedy was sentenced to a term of life imprisonment, to be followed by five years of supervised release. He was also ordered to pay restitution to Roy Rogers in the amount of $1,460, and directed to pay a special assessment of $50 for each count of Counts One through Five, for a total special assessment of $250.

---

1. The D.C.Circuit has yet to address this issue directly; however, in rejecting a statutory claim, it reached a similar conclusion as the Court in *Craveiro.* *See United States v. Jordan,* 810 F.2d 262, 269 (D.C.Cir.1987). In *Jordan,* the D.C.Circuit held that the language of 21 U.S.C. § 851(a) did not require the Government to give a defendant sufficient time to plea bargain. In light of this precedent, therefore, it is highly unlikely that the D.C.Circuit would diverge from the due process holding of the First Circuit in *Craveiro.*

2. The three-strikes statute, 18 U.S.C. § 3559(c), expressly adopts only the notice requirements of 21 U.S.C. § 851(a). Additional procedural safeguards, however, are also found in the immediately following subsections, 21 U.S.C. § 851(b) and (c). Those subsections require that the sen-

tencing court inquire whether the defendant affirms or denies his prior convictions, *see* 21 U.S.C. § 851(b), and if the defendant denies, then the Government is required to provide proof of those convictions beyond a reasonable doubt, *see* 21 U.S.C. § 851(c). It may be possible that these additional procedural safeguards extend from the narcotics sentencing context to the three-strikes context. *Cf. United States v. Watts,* —— U.S. ——, ——, 117 S.Ct. 633, 634–36, 136 L.Ed.2d 554 (U.S.1997).

3. Apparently, in his defense, Kennedy sought to convince the jury that he was a bank robber, not a Roy Rogers robber. That theory of defense, however, was probably ill-advised if he intended to challenge at sentencing the validity of his two prior armed robbery convictions.