**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FRANK ANTHONY OBERLE,

    Defendant-Appellant.

No. 96-2275

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-96-149-1)**

---

John V. Butcher, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Tara C. Neda, Assistant United States Attorney, Albuquerque, New Mexico (John J. Kelly, United States Attorney for the District of New Mexico, with her on the briefs), for Plaintiff-Appellee.

---

Before **ANDERSON**, **EBEL** and **LUCERO**, Circuit Judges.

---

**EBEL**, Circuit Judge.

Frank Oberle appeals his conviction for bank robbery and his resulting sentence. He contends that the district court erred in admitting evidence regarding his prior criminal history and in refusing to admit testimony that

supported his defense; that the prosecutor committed misconduct by arguing that he was a professional bank robber; that the jury was instructed incorrectly; and that he was unconstitutionally sentenced to life imprisonment under the federal "Three Strikes" law, 18 U.S.C. § 3559(c) (1994). We affirm.

## BACKGROUND

Between November 1995 and February 1996 four Albuquerque banks were robbed late on Friday afternoons by a man wearing a ski mask who carried a gun in his left hand and a bag in his right, asked for $20, $50 and $100 bills, and left after warning witnesses that there was a bomb at the door. After the fourth robbery a witness reported the robber's license plate number to police. The owner of the car told police he had loaned his car to Frank Oberle ("Oberle"). After investigation, Oberle was charged with one count of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) & (d) and 18 U.S.C. § 2. The charge related to the last bank robbery, which took place February 23, 1996.

Oberle was tried before a jury. He did not testify. However, Christopher Jensen ("Jensen"), who drove the getaway car, testified against Oberle pursuant to a plea agreement. He identified Oberle as the robber who entered the banks and described how Oberle prepared for the robberies. Oberle's brother, Gary Oberle ("Gary"), testified under a grant of immunity for the bank robberies. Gary said that he saw Oberle and Jensen counting the robbery proceeds and that he

overheard Oberle talking about robbing banks. He further testified about his own expenses and recent purchases, which greatly exceeded his monthly income, but claimed that Oberle had helped him financially. Gary also admitted to having a heroin addiction and being in a methadone treatment program.

During trial the government sought to introduce a letter written by Oberle to Gary while Oberle was in jail awaiting trial. The letter stated, "Just tell her I'm going back to prison on a violation. Don't tell her that I have a new case" (emphasis in original). Oberle objected to the admission of this evidence under Federal Rules of Evidence 404, 403, and 609. The court allowed the admission of the evidence as a party's admission under Federal Rule of Evidence 801(d).

Also during trial an FBI agent testified that when he interviewed Oberle, Oberle had stated that he was surprised that the FBI had not come to him earlier because "the bank robberies were his MO," meaning modus operandi. Oberle objected and moved for a mistrial on the grounds that the jury had effectively been informed that Oberle had previously been convicted of bank robbery. The district court overruled Oberle's objection and denied his motion for a mistrial. During opening statement and closing argument the prosecutor referred to Oberle as a seasoned bank robber and a professional who showed knowledge of the justice system. Oberle objected to only one of these references.

Oberle's theory of defense was that there was one robber of all four banks, and it was his brother Gary. As part of his defense, Oberle sought to introduce evidence from a methadone treatment clinic of the drug treatment Gary had received to show that Gary had a motive to commit robbery because he had an extensive heroin addiction and to undermine Gary's credibility regarding his claims to have stopped using drugs. After the drug treatment clinic moved to quash Oberle's subpoena to it, the district court found that Oberle had not yet shown good cause for introducing the clinic's records, which were confidential under 42 U.S.C. § 290dd-2(a) (1992). The court left open the possibility of introducing the records, depending on Gary's testimony, but ultimately denied Oberle's motion to admit them. The court also quashed a subpoena issued to Oberle's probation officer, who was to testify in Oberle's defense that Oberle never showed signs of drug use, that he had been employed at the relevant times, and that he could reasonably have expected to be put back in prison for a parole violation if he picked up a new charge even if he were acquitted of the new charge. That would explain why his statement about "Just tell her I'm going back to prison on a violation" was not necessarily an admission of guilt on the new charge of bank robbery.

At the close of trial, Oberle objected to the court's instruction directing jurors not to be concerned about the guilt of any person other than Oberle,

because it contradicted the defense theory that Gary was the guilty party. He also objected to the court's aiding and abetting instruction, because, he asserted, first the instruction contradicted the government's theory of liability, and second the particular instruction did not adequately inform jurors that Oberle could not be guilty of aiding and abetting merely by associating with the robbers.

The jury found Oberle guilty. At sentencing the district court found that Oberle was subject to mandatory life imprisonment under the "Three Strikes" law, 18 U.S.C. § 3559(c) (1994), because he had previously been convicted of at least two serious violent felonies. Oberle argued that he was entitled to a hearing at which the government was required to prove beyond a reasonable doubt that he had previously been convicted of at least two serious violent felonies. Based on the government's presentation of certified copies of the judgments of conviction, the district court rejected Oberle's argument and found that Oberle had two prior bank robbery convictions and two prior aggravated robbery convictions. Oberle was sentenced to life imprisonment, and he now appeals his conviction and sentence.

## DISCUSSION

### A. Admission of Evidence

Oberle appeals the district court's decision to allow the admission of Oberle's letter to Gary, in which Oberle wrote "Just tell her I'm going back to

prison on a violation.  Don't tell her that I have a new case."  He also objects to the introduction of his statement to the FBI agent that "the bank robberies were his MO."

We review the district court's decision to admit evidence for an abuse of discretion.  See United States v. Segien, 114 F.3d 1014, 1022 (10th Cir.), petition for cert. filed (U.S. Aug. 26, 1997) (No. 97-6568).  Although the statements are party admissions under Rule 801(d) and thus not hearsay, they must nevertheless also be analyzed for admissibility under Rule 404(b) because they reveal or suggest prior criminal conduct.  See United States v. Maden, 114 F.3d 155, 157 (10th Cir.), cert. denied, 118 S. Ct. 226 (1997).  Under Rule 404(b), we examine whether:

> (1) the prosecution offered the evidence for a proper purpose under Rule 404(b); (2) the evidence is relevant under Fed. R. Evid. 401; (3) the evidence's probative value is not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (4) the district court, upon request, gave a proper instruction limiting the jury's consideration of the evidence to the purpose for which it was admitted.

Segien, 114 F.3d at 1022-23.

**1.  Statement about going back to prison**

Oberle contends that his statement "Just tell her I'm going back to prison on a violation.  Don't tell her that I have a new case," was erroneously allowed as evidence of his prior criminal record.  The government, on the other hand, argues

that this statement is an acknowledgment of guilt of the charged offense because it is a prediction by Oberle that he will ultimately be found guilty and sent to prison on his "new case."

This statement is quite equivocal. Although it could be read as the government suggests, it is not a clear admission of guilt of the charged bank robbery. Because a natural reading of the statement is not particularly inculpatory on the crime charged and because the statement effectively informs the jury that Oberle has been in prison previously, it may have been an abuse of discretion to conclude that the statement's probative value outweighed its prejudice, as required by the Rule 404(b) analysis. However, even if the court erred in allowing the statement, such error does not require reversal in light of the substantial evidence against Oberle and the limiting instruction given to the jury in the final jury instructions. See United States v. Birch, 39 F.3d 1089, 1094-95 (10th Cir. 1994) (harmless error where record "reveals substantial evidence of defendant's guilt"); see also United States v. Olivo, 80 F.3d 1466, 1469 (10th Cir.), cert. denied, 117 S. Ct. 265 (1996) (error would be harmless where considerable evidence linked defendant to crime and court "cautioned the jury" about the limited purpose of the evidence). Further, the jury was made aware of Oberle's prior history of robbing banks through the admission of his "MO" statement, and, as discussed below, the admission of that statement was not

erroneous. Consequently, we do not believe that the statement had a "substantial influence" on the outcome of the case. See United States v. Flanagan, 34 F.3d 949, 955 (10th Cir. 1994).

### 2. Statement about Oberle's MO

Over Oberle's objection, the district court admitted the FBI agent's testimony that Oberle acknowledged to him that "the robberies were his MO." Oberle argues the statement was "unadulterated propensity evidence" that "was relevant for no proper purpose." Where a district court fails to "precisely articulate the purpose of this evidence under Rule 404(b), this is subject to a harmless error analysis." United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995). The error is harmless "if the purpose for admitting the evidence is apparent from the record and its admission is proper." Id.

At least one proper Rule 404(b) purpose for admitting the statement is apparent from the record, as it helps establish the identity of the bank robber. Information that Oberle had committed bank robberies in a similar manner was relevant in this case, where the main issue was the identity of the robber. See United States v. Morgan, 936 F.2d 1561, 1572 (10th Cir. 1991); United States v. Porter, 881 F.2d 878, 887 (10th Cir. 1989). Although the statement was prejudicial, its probative value outweighed the prejudice, and the district court gave an instruction regarding the limited purposes for which evidence of other

acts may be considered. Consequently, the district court did not abuse its discretion in allowing the statement to be admitted.

## B. Refusal to Admit Evidence

Oberle challenges the district court's quashing of two subpoenas, one to the clinic that treated Gary's heroin addiction and the other to Oberle's probation officer. Generally we review a district court's decision to exclude evidence for an abuse of discretion, see United States v. Patterson, 20 F.3d 809, 812 (10th Cir. 1994), but the question of whether to admit confidential records of substance abuse treatment is a mixed question of law and fact to be reviewed de novo, see United States v. Corona, 849 F.2d 562, 565 (11th Cir. 1988).

### 1. Drug Treatment Records

Oberle subpoenaed the Silver Street Clinic, where Gary allegedly had been receiving methadone treatment for his heroin addiction. He sought access to Gary's treatment records to show the extent of his heroin addiction, whether he was using heroin or other drugs during treatment, and the extent of the payments Gary made to the clinic. The clinic moved to quash the subpoena. The district court ruled that it had not yet found good cause for admitting the confidential records, as required by 42 U.S.C. § 290dd-2 (1992), and that it would reconsider its decision when Gary testified. The evidence was never admitted.

42 U.S.C. § 290dd-2(a) (1992) requires that drug treatment records in programs receiving federal funds be kept confidential. Disclosure is permitted, however, "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm." 42 U.S.C. § 290dd-2(b)(2)(C) (1992). "In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." Id.; see also 42 C.F.R. § 2.64(d) (1997) (to find good cause, there must be no other adequate way of obtaining the information, and the public interest and the need for disclosure must outweigh the potential injury to the patient, the physician-patient relationship, and the treatment services). Oberle argues that he established good cause for disclosing Gary's records because there was no alternative means of acquiring the information; the public interest and need for disclosure, in the form of assuring a fair trial to a criminal defendant, outweighed injury to Gary; and there was no harm to Gary's relationship with clinic staff or to the course of his treatment because he had already left the program.

The district court did not abuse its discretion in quashing the Silver Street subpoena. The Silver Street Clinic was not the only source of the information Oberle sought. In fact, the jury was presented with the facts that Gary was

addicted to heroin and entered methadone treatment. Given that the basic information was available, even if not in Oberle's most preferred form, Oberle's need for the information did not outweigh section 290dd-2's emphasis on keeping treatment records confidential.

### 2. Probation Officer

Oberle also challenges the district court's decision to quash the subpoena issued to his probation officer. He contends that the probation officer's testimony would have established that Oberle showed no signs of drug use, that he was employed at the time of the bank robberies, and that he had reason to believe his parole could be violated even without his being guilty of the instant charge of bank robbery, thus explaining the statement in his letter "Just tell her I'm going back to prison on a violation." The district court held that confidentiality concerns inherent in the work of the Probation Department urged against allowing the probation officer to testify, and that it was unnecessary for him to testify for the purposes presented by the defense.

At least two circuit courts have acknowledged that a defendant may subpoena a probation officer. See United States v. Lanterman, 76 F.3d 158, 161 (7th Cir. 1996); United States v. $2,500 in United States Currency, 689 F.2d 10, 16 (2d Cir. 1982). We agree with the Second Circuit that a defendant seeking to subpoena a probation officer must show a special need for the testimony. See

$2,500 in United States Currency, 689 F.2d at 16 ("Absent some showing of special need by [defendant], we see no reason to breach the confidentiality of the Probation Department's post-sentencing supervisory reports.").

Of the three reasons Oberle presents for allowing the admission of the evidence, the strongest is that the probation officer's testimony would have explained that Oberle's statement about returning to prison on a violation did not necessarily indicate that Oberle believed he was guilty of a crime. Given the countervailing concerns about the supervisory process, however, we do not believe that this factor is enough to find that the district court abused its discretion in refusing to admit the evidence. Similarly, Oberle's desire to have the probation officer testify that he never showed signs of drug use and that he had been employed were of marginal relevance. Those reasons are insufficient to justify calling the probation officer, especially since the jury was informed about Oberle's employment through other testimony.

## C. Prosecutorial Misconduct

Oberle argues that the prosecutor committed misconduct when she repeatedly argued that Oberle was a professional bank robber.[1] We recently stated:

> We use a two-step process when evaluating claims of prosecutorial misconduct. First, we examine whether the conduct was, in fact, improper. If we answer that question in the affirmative, we must then determine whether it warrants reversal.

United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir.), cert. denied, 117 S. Ct. 253 (1996) (internal quotation marks and citations omitted). Defense counsel objected to only one of the challenged comments, one in which the prosecutor stated that Oberle tried to get Jensen a "Fifth Amendment plea arrangement, showing some wherewithal, some knowledge of the criminal system, I would say." This comment is reviewed de novo. See Ivy, 83 F.3d at 1288. Because defense counsel did not object to the remaining comments, we review them for plain error.

---

[1] During opening statement, the prosecutor stated that Jensen would testify about "his association with Frank Oberle and the tricks of the trade that he learned from Frank Oberle. And he will tell you that Frank Oberle is a seasoned bank robber." During closing argument, she stated, "Who is in command? Who is in control? Who is the pro?"; "Who is showing ownership and control of the money? Who is in command? Who is the pro?"; that Oberle tried to get Jensen a "Fifth Amendment plea arrangement, showing some wherewithal, some knowledge of the criminal system, I would say."; "[Jensen] gave you details about things about which, you know, he wouldn't know unless he was dealing with a pro."; "And the Fifth Amendment, isn't he a pro? Telling Chris how to get a lawyer, what to plead."; and "This man has been around the block. This man is in control. This man feels cocky." Oberle also complains that the prosecutor stated that Gary was not the sort of man to commit bank robbery, implying that Oberle was the sort of man who would.

- 13 -

See United States v. Sands, 968 F.2d 1058, 1063 (10th Cir. 1992). Under a plain error analysis, "reversal is appropriate only if, after reviewing the entire record, we conclude that the error is obvious and one that would undermine the fairness of the trial and result in a miscarriage of justice." Id. (citing Fed.R.Crim.P. 52(b) and United States v. Young, 470 U.S. 1, 16 (1985)). "When evaluating allegedly inappropriate remarks of counsel for plain error, we must view the remarks in the context of the entire trial." Id. at 1063-64 (citing Young, 470 U.S. at 11-12).

The government argues that it merely highlighted admissible evidence for proper purposes -- to show Oberle's knowledge, control and consciousness of guilt -- and to rebut the defense's argument that Gary was the bank robber. The transcript reveals, however, that in making these arguments the prosecutor exceeded the boundaries of commenting upon the evidence. She moved from arguing that the evidence showed Oberle was in control of the operation (a permissible inference) to arguing that he was a "pro" who "had been around the block" and who showed "some knowledge" of the criminal system. This is more akin to arguing propensity than it is focusing the jury's attention on the evidence, and it was improper to the extent that it suggested that the jury could make its decision based partly on the fact that Oberle had committed other bank robberies or was experienced with the criminal justice system. See United States v. Peña, 930 F.2d 1486, 1490-91 (10th Cir. 1991).

- 14 -

The ultimate question, however, is whether Oberle was deprived of a fair trial. See id. at 1491. "[W]e will not overturn a conviction on account of improper argument by the prosecutor unless the prosecutor's misconduct was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented." Id. (internal quotation marks and citations omitted). "In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case." United States v. Ramirez, 63 F.3d 937, 944 (10th Cir. 1995) (internal quotation marks and citation omitted). Thus, factors relevant to determining whether the improper commentary affected the fairness of the trial include whether the instance was singular and isolated, whether the district court instructed the jury that the attorneys' argument was not evidence, and whether there was substantial evidence of the defendant's guilt. See Ivy, 83 F.3d at 1288; Ramirez, 63 F.3d at 944; Peña, 930 F.2d at 1491. "When evaluating errors claimed by appellate counsel which were not raised by trial counsel, we must be cautious of a tendency to seize upon errors which, removed from context, take on an aspect of seriousness which they never had below." Sands, 968 F.2d at 1064 (internal quotation marks and citations omitted).

Oberle was not deprived of a fair trial by the prosecutor's improper remarks. The prosecutor's remarks focussed on ascertaining ownership and control of the bank robbery proceeds and establishing the identity of the bank robber by arguing that only Oberle of the three principal suspects had the force of personality and sophistication to pull off the robberies. When taken in context of the entire trial and the lengthy closing arguments and rebuttal, the objectionable references did not significantly detract from the proper focus of the argument. In addition, the district court instructed the jury that counsel's argument was not evidence.

Our conclusion is buttressed by the fact that we must review the majority of the comments for plain error. "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" Young, 470 U.S. at 15 (quoting United States v. Frady, 456 U.S. 152, 163 n.14 (1982)). Though the statements were improper, this is not such an egregious case as to warrant reversal, particularly considering the trial as a whole and the force of the evidence against Oberle. See, e.g, United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir. 1994); Sands, 968 F.2d at 1064.

**D.     Jury Instructions**

We review the adequacy of jury instructions de novo, examining the challenged instruction in light of the instructions as a whole.  See United States v. Russell, 109 F.3d 1503, 1513 (10th Cir.), cert. denied, 117 S. Ct. 2525 (1997).

**1.  Aiding and abetting instruction**

Oberle challenges the district court's decision to give an aiding and abetting instruction on two grounds:  first, that it contradicted both the evidence and the government's theory of the case that Oberle was the principal actor, and second, that the district court refused to give the defense's requested instruction regarding "mere presence" as insufficient to aid and abet a crime.

Oberle first suggests that during trial the government proceeded on the theory that he was the principal bank robber and that to give an aiding and abetting instruction at the conclusion of the evidence impermissibly changed the focus of the case.  In United States v. Cueto, 628 F.2d 1273, 1275 (10th Cir. 1980), however, this court held that "[e]ven though the Government's theory of the case was that [defendant], and not [accomplice], was the one who actually robbed the bank, it was nevertheless, under the circumstances, quite proper to give the jury an instruction on aiding and abetting."  Oberle seeks to distinguish Cueto by arguing that the evidence here, unlike in Cueto, does not support an inference that he aided and abetted the robbery.  Cueto, however, is almost

identical to this case factually. There, the court noted that even if the jury did not believe that Cueto was the bank robber, the testimony of the getaway car driver established Cueto's preparations for the robbery, which would support his conviction as an aider or abettor. See id. Here, Jensen testified about Oberle's preparations for the robbery. Taken in the light most favorable to the government, this evidence is sufficient for conviction and could support an alternative aiding and abetting charge. See United States v. Scroger, 98 F.3d 1256, 1262 (10th Cir. 1996) ("[Defendant] knew, or should have known, that when more than one person is involved in a criminal act, the district court may properly submit an aiding and abetting instruction to the jury, even though it was not charged in the indictment . . . ."), cert. denied, 117 S. Ct. 1324 (1997). The district court did not err in giving the aiding and abetting instruction.

Oberle also argues that the district court should have given his requested instruction that mere association with the robbers did not constitute aiding and abetting and that he had to have the intent to participate in the robbery. The instruction tendered to the jury, however, included those concepts, and thus the district court did not err. See United States v. McKneely, 69 F.3d 1067, 1077-78 (10th Cir. 1995).

## 2. Instruction regarding guilt of other persons

The district court also instructed the members of the jury not to concern themselves with the guilt of anyone except Oberle. Oberle contends that this instruction directed jurors to ignore his defense, which was based on establishing Gary Oberle's guilt.

This instruction did not direct jurors to ignore Oberle's defense. Read in combination with the instruction requiring the jury to find guilt "beyond a reasonable doubt," it focused jurors on the task at hand: determining whether Oberle was guilty of the February 23, 1996 robbery.

## E. Combination of errors

Oberle argues that he was prejudiced by the combination of errors that allegedly infected his trial. "The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Id. at 1470. The analysis, however, "should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." Id. at 1471.

Assuming that the statement "Just tell her I'm going back to prison on a violation" was improperly admitted, we have identified two errors (the other being the improper prosecutorial argument). We do not believe that the combination of the two, however, rises to the level of reversible error.

## F.   "Three Strikes" Statute

The district court found Oberle subject to mandatory life imprisonment pursuant to the "Three Strikes" enhanced sentencing statute, 18 U.S.C. § 3559(c) (1994). Oberle argues that the district court improperly sentenced him under section 3559(c) because it did not conduct a hearing on his prior record. Instead, the district court found that Oberle had committed four prior violent felonies (two previous Albuquerque bank robberies and two Ohio aggravated robberies) based solely on the certified copies of conviction. We review questions of statutory construction de novo. See United States v. Diaz, 989 F.2d 391, 392 (10th Cir. 1993).

18 U.S.C. § 3559(c)(1) provides that a person convicted of a third serious violent felony or serious drug offense shall be sentenced to life imprisonment. The term "serious violent felony" generally includes robbery under 18 U.S.C. § 2113. See 18 U.S.C. § 3559(c)(2)(F) (1994).

Section 3559(c)(4) explicitly incorporates the provisions of 21 U.S.C. § 851(a) (part of the Controlled Substances Act), which requires the government

to inform the court and the defendant of the convictions on which it intends to rely in seeking a sentencing enhancement.  Oberle argues that the provisions of 21 U.S.C. § 851(b) and 21 U.S.C. § 851(c), which require the court to conduct an evidentiary hearing if the defendant denies the convictions and require the government to prove the prior convictions beyond a reasonable doubt, should likewise apply to proceedings under 18 U.S.C. § 3559(c).  See United States v. Kennedy, 952 F. Supp. 5, 8 n.2 (D.D.C. 1997) (acknowledging that the safeguards provided by sections 851(b) and 851(c) may apply under 18 U.S.C. § 3559), remanded, 133 F.3d 53, 1998 WL 11780 (D.C. Cir. Jan. 16, 1998).  Oberle seeks support from the fact that section 3559(c)(3)(A) allows a defendant to escape the sentencing enhancement by proving with clear and convincing evidence that a prior robbery did not involve a firearm or dangerous weapon and did not result in bodily injury, and hence does not satisfy the definition of a "serious violent felony."  This subsection would be meaningless, he contends, if the defendant has no right to a hearing.

No federal court has held that the provisions of sections 851(b) and 851(c) should apply in section 3559(c) proceedings; the only case addressing the issue that we have found, Kennedy, simply acknowledged the possibility.  Further, the legislative history mentions only section 851(a), not sections 851(b) or (c).  See H.R. Rep. 103-463, 1994 WL 107574 (1994).  In the absence of a contrary

legislative intent or purpose, the maxim of statutory construction "expressio unius est exclusio alterius" (the expression of one excludes others) tends to indicate that had Congress intended to incorporate the provisions of sections 851(b) and (c) into section 3559, it would have done so rather than specify only section 851(a). See 2A Sutherland Statutory Construction § 47.23 (5th ed. 1992).

The fact that the defendant does not concede the existence or seriousness of former convictions does not automatically require a separate section 3559 hearing. Rather, it is only when a defendant tenders evidence to deny the seriousness of the former convictions or to deny that the prior convictions pertained to him or her that the district court must conduct a hearing. Here, at his sentencing hearing Oberle tendered neither his own testimony nor any other evidence that the prior convictions were not his or that they did not satisfy section 3559(c)(3)'s definition of "serious violent felony." All that he did was to put the government to its proof. The district court was not required to conduct a separate section 3559 hearing under these circumstances given the evidence that the government did offer.

Oberle argues that under section 3559(c) the government should have to prove his prior convictions beyond a reasonable doubt. Section 3559(c), however, is a sentencing enhancement statute. See United States v. Wicks, 132 F.3d 383, 385 (7th Cir. 1997); cf. Segien, 114 F.3d at 1018-20 (differing between an

element of the offense and a sentencing enhancement). The government's burden of proof at sentencing generally does not reach the level of "beyond a reasonable doubt." See Segien, 114 F.3d at 1019-20; see also McMillan v. Pennsylvania, 477 U.S. 79, 91-92 (1986) (preponderance standard usually satisfies the Due Process Clause at sentencing). In fact, we have declined to impose a "beyond a reasonable doubt" standard in cases involving other sentencing enhancements. See Segien, 114 F.3d at 1020 (18 U.S.C. § 111(b)); United States v. McMahon, 91 F.3d 1394, 1397 (10th Cir.) (Armed Career Criminal Act, 18 U.S.C. § 924(e)), cert. denied, 117 S. Ct. 533 (1996). We also decline to impose a "beyond a reasonable doubt" standard in this section 3559(c) case.

The government introduced certified copies of Oberle's four previous convictions. Oberle offered no evidence to contradict those certified copies. Consequently, the government fulfilled its burden of proving Oberle had at least two prior serious violent felony convictions, and Oberle was correctly sentenced to life imprisonment under the "Three Strikes" law.

## CONCLUSION

For the reasons outlined above, Frank Oberle's conviction and sentence are AFFIRMED.