**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JON T. MCBRIDE,

Defendant - Appellant.

No. 15-4030
(D.C. No. 1: 13-CR-00027-TS-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

Jon T. McBride made a lot of money but did not report any of it to the Internal

Revenue Service (IRS). And when it came knocking at his door, he took steps to hide his

assets. He told the jury his actions were justified because he "sincere[ly]" believed none

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument.

This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

of his earnings constituted "income" and claimed he was not "hid[ing]" his assets but merely "protect[ing]" them based on those sincerely-held beliefs. (R. Vol. 2 at 639-40, 669, 694-95.) The jury did not buy it and convicted him of several tax-related counts. He claims prosecutorial misconduct based on several closing remarks the prosecutor made in rebuttal argument. Most of the comments were not improper but even the improper ones do not warrant reversal.

## I. Background

We recite the facts in the light most favorable to the jury's verdict. *United States v. Pablo*, 696 F.3d 1280, 1284 n.5 (10th Cir. 2012). From 1998 to 2009, McBride earned substantial income selling cell phone belt clips, first through The Clip Company and then through Cliphanger, both limited liability companies (LLCs).[1] He failed to report any of it to the IRS. For instance, McBride earned $109,785 from The Clip Company in 2005; yet the only income he reported on his 2005 individual tax return (Form 1040) was $3,662 in interest earnings. He listed his occupation as "American Citizen" and stamped the return: "Not Liable." (Supp. R. Vol. 2 at 2-3, 5-6.) Two years later, he filed an amended return for 2005 (Form 1040X). This time he attached the Schedule K-1 he had received from The Clip Company showing the $109,785. Yet he did not report this

---

[1] An LLC is a "flow through entity," meaning it does not pay taxes on its earnings; instead, its earnings are passed on to its owners, called members, based on their ownership share. (R. Vol. 2 at 92.) The members in turn are required to report these earnings as income on their individual tax returns (Form 1040) and pay taxes on those earnings. An LLC provides its members with a Schedule K-1 reporting each member's earnings. Although it does not pay taxes, an LLC must still file a "partnership return" (Form 1065) with the IRS reporting its earnings.

amount as income on the amended return. In the section of that return allowing for an explanation of the reasons for the amended return, McBride wrote: "I HAVE . . . ATTACHED A K-1 FROM THE CLIP CO. LLC. THE CLIP CO. LLC IS <u>NOT</u> A FEDERALLY CONNECTED BUSINESS. IT IS PRIVATE. ALL PROCEEDS (REVENUE) I RECEIVED WERE <u>NOT</u> FEDERALLY CONNECTED. ALL EARNINGS RECEIVED WERE PRIVATE SECTOR EARNINGS." (Supp. R. Vol. 2 at 8.) McBride continued these antics from 2006 to 2009. During this time period, he earned over $400,000 from The Clip Company and Cliphanger.[2] Yet he reported no income on his 2006 tax return, did not file a 2007 tax return, and did not report any of these earnings on his 2009 return.[3]

Not only did McBride not report his earnings from The Clip Company and the Cliphanger, he also failed to report other income. In 2006, he sold his vacation home in Garden City, Utah. A few days before closing, he transferred his interest in the home to

---

[2] McBride's businesses experienced losses in 2008. He did not have any taxable income for 2008.

[3] Starting in 2006, McBride created nominee entities to distance himself from his earnings. In 2006, he formed Ho Hsing Plastics Industries, LLC, to replace him as a member in The Clip Company and Cliphanger. The next year, he formed Mainstar Electric, LLC, to replace Ho Hsing Plastics as a member in Cliphanger. Although McBride was no longer a named member of The Clip Company and Cliphanger, the money Ho Hsing and Mainstar made as members of these entities passed through to McBride. He was to report it to the IRS on his individual tax returns. As already indicated, he did not do so. He was also responsible for filing partnership returns for Ho Hsing and Mainstar with the IRS to report the money these entities received as members of The Clip Company and the Cliphanger. He did not do so for Ho Hsing in 2006 and 2007 and, although he filed a return with the IRS for Mainstar for 2007, he falsely reported no income.

J&J Trust; after the sale, he directed the trust to use the proceeds (over $200,000) to pay down the mortgage on his primary residence. That same year, McBride received over $27,000 in retirement distributions. He did not report the sale proceeds or the retirement distributions as income on his 2006 return.

McBride also took steps to hide his assets from the IRS. In 2006, he and his wife transferred their interest in their primary residence to Pacific Homes, an LLC established under New Mexico law, which does not require disclosure of an LLC's members. McBride also did not have a personal bank account; instead, he used his wife's bank account or those of his nominee entities, *see supra* n.3, to pay his personal expenses.

McBride was indicted with one count of filing a false tax return (the 2005 amended return) in violation of 26 U.S.C. § 7206(1) (Count 1) and three counts of attempted evasion of a tax assessment (for the tax years 2006, 2007 and 2009) in violation of 26 U.S.C. § 7201 (Counts 2-4). At trial, McBride relied on the good-faith defense. *See Cheek v. United States*, 498 U.S. 192 (1991). He testified to sincerely believing his business earnings, retirement distributions, and the proceeds from the sale of his vacation home did not constitute "income" and therefore were not subject to tax. He also claimed he was not "hid[ing]" his assets but merely "protect[ing]" them from the IRS based on his sincerely held beliefs. (R. Vol. 2 at 694-95.) The jury was not persuaded and convicted him on all four counts. He was sentenced to 27 months

imprisonment.[4]

## II. Discussion

McBride argues the prosecutor made improper remarks during rebuttal closing

argument. He filed a motion for a mistrial or new trial, challenging the improper

comments. The judge denied the motion. Our review is for an abuse of discretion.[5]

*United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996).

---

[4] McBride was also indicted with evading the payment of taxes due ($839,328) for 1999 to 2002 (Count 5). The jury acquitted him on this count and the judge declined to consider it as relevant conduct for purposes of sentencing. We need not discuss it in any significant detail. For our purposes it suffices to say that the $839,328 tax assessment resulted from an IRS audit of The Clip Company and McBride from 2004 to 2005. McBride responded to the amount personally assessed against him with his belief that his earnings from The Clip Company did not constitute "income"—the same theory he used to justify his non-payment of taxes from 2005 to 2009 (Counts 1-4). But the jury also heard evidence that McBride and his partner in The Clip Company had hired an attorney to appeal from the taxes assessed against the company and that appeal was never resolved. Moreover, there was evidence that McBride reasonably believed that the company's appeal had to be resolved before his tax liability for 1999 to 2002 could be determined. This evidence, which was not applicable to Counts 1-4, may explain the reason for the acquittal on Count 5, which required the government to prove, among other things, that McBride "owed substantial income tax in addition to the tax liability which he reported on his income tax returns for tax years 1999 to 2002" and had "willfully" evaded the payment of the taxes. (R. Vol. 1 at 282.)

[5] According to McBride, we should apply de novo review, which we do when a trial court overrules a contemporaneous objection to prosecutorial misconduct but the defendant makes no post-trial motion. *Gabaldon*, 91 F.3d at 94. He claims it is unfair to subject him to an abuse of discretion standard simply because he later put his contemporaneous objections in a motion. Doing so, he claims, discourages defendants from seeking relief from the trial court in the first instance. But we cannot overturn *Gabaldon* absent an intervening Supreme Court or en banc decision invalidating it. *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1333 (10th Cir. 2003). In any event, McBride is benefitting from his post-trial motion because it subjects the comments to which he did not object to the abuse of discretion standard rather than the more onerous plain error standard. *See United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011).

### A. Improper Remarks

During closing argument, defense counsel argued extensively as to how McBride sincerely believed his earnings were not income and therefore were not subject to tax and this good-faith belief constituted a complete defense on all counts. He also claimed McBride was not hiding anything from the IRS. Specifically as to Count 1, he argued McBride had not made a false statement on his 2005 amended tax return because, although he reported no income in the appropriate box on the return, he did attach the Schedule K-1 revealing his earnings. According to defense counsel, such conduct was not a failure to "report" income, an element of the offense. (R. Vol. 1 at 268, Supp. R. Vol. 1 at 66.)

In rebuttal, the prosecutor began by appealing to the jurors' common sense: "Thank goodness, ladies and gentlemen, for common sense, your common sense. Mr. Rice [defense counsel] has just spent a lot of time asking you to suspend common sense. Common sense is probably the most valuable tool you have for evaluating the evidence in the case." (Supp. R. Vol. 1 at 69.) A short time later, the prosecutor responded to defense counsel's argument that attaching the Schedule K-1 to the 2005 amended return satisfied McBride's duty to "report." (*Id.* at 71.) He told the jury such conduct is not "reporting" income, especially when McBride indicated on the amended return it was not income. (*Id.*) He added: "So [the IRS is] supposed to divine that it is income when he says it's not income, [it is] supposed to divine that . . . he meant to put it on the 1040 but he didn't and put it on for him. That's just a ruse, ladies and gentlemen, just a ruse, and in defiance of common sense." (*Id.* at 71-72.) Defense counsel immediately objected to

- 6 -

the term "ruse." Before the judge could respond, the prosecutor quipped: "Well, it's a double ruse then." (*Id.* at 72.) The judge warned the prosecutor to "be careful, please." (*Id.*) Later, in responding to defense counsel's argument regarding Count 5, to which the jury ultimately acquitted, *see supra* n.4, the prosecutor referred to "[defense] counsel [having] taken us down a long detour that led to a dead end . . . ." (*Id.* at 75.)

The prosecutor then turned to refuting the sincerity of McBride's beliefs, arguing they constituted a disagreement with the law, which does not satisfy the good-faith defense. He concluded rebuttal with the following:

> Ladies and gentlemen, having earned millions of dollars, Mr. McBride decided to pick up the bogus philosophy to try to save what he had left. To him paying taxes, it seems, is for schmucks, working stiffs like you and me, who go to work everyday, earn our keep, and pay our taxes. He placed himself above that. It's the ultimate irony, ladies and gentlemen, that Mr. McBride, who speaks so passionately about his love for the Constitution, has taken a course that would present a great danger to the Constitution of the United States. The Constitution is based on a few bedrock principles that we hold dear. One of them is that we are a nation ruled by laws, not by men. There are very few countries that can say that.

(*Id.* at 87.)

At this point, defense counsel lodged an objection, claiming the prosecutor was improperly inciting the jury. The judge told the prosecutor to "[g]o ahead." (*Id.*) The prosecutor continued:

> There are two things that remind me of this great principle. One is when the Office of the Presidency of the United States changes hands from one political party to another. That's inspiring. The other experience that reminds me of the rule of law is when I walk into this building, because it is here that the rule of law is acted out each and everyday.
>
> Mr. McBride stands in opposition to the rule of law. He stands for the proposition that each person may be a law unto himself. If we don't like the law,

we just interpret it our way. If I don't like to pay taxes, I just adopt the belief that earnings are not income and hope to fool people into thinking I'm acting in good faith. Where would that lead, ladies and gentlemen? It would lead to anarchy and chaos.

Perhaps none of us loves paying taxes, but we do it, don't we? We may grumble a bit, but we do it because we're in this together. This great country thrives because the vast majority of its people have accepted a priceless social contract, a common commitment to do our part to maintain this country's greatness. We pay our taxes because we want to contribute to the wellbeing of our communities and our nation, we pay them because we don't want to be a burden, our -- we don't want the burden of our taxes to fall on others. And if there are those who, through no fault of their own, can't pay, we gladly carry their load. If we didn't, who would pay for the freeways that Mr. McBride drives on everyday, who would pay for the airport security that protects him on his flights to China, if we didn't, who would pay his medical expenses when he gets old, and for that matter, who would pay ours? Those things cost money. Mr. McBride has been enjoying them for free for the past nine years or more. And whether he pays another dollar of taxes, we'll keep paying ours. But if he's getting a free pass, ladies and gentlemen, by committing the crimes charged in this Indictment, then it is time to hold him accountable in the interest of what we hold dear. Thank you.

(Supp. R. Vol. 1 at 87-89.)

*B. Analysis*

Evaluating a claim of prosecutorial misconduct is a two-step process. *United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011). First we ask "whether the conduct was, in fact, improper." *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998) (quotation marks omitted). If so, we then determine whether reversal is warranted. *Id.* When the alleged prosecutorial misconduct is based on improper argument by the prosecutor, we will not overturn a conviction unless the misconduct "was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented." *Id*. (quotation marks omitted). In so deciding, we do not consider the

prosecutor's remarks in a vacuum. *Id.* Rather, we consider the trial as a whole, including the trial court's curative acts, the extent of the misconduct, and its role within the case. *Id.* Factors relevant to determining whether a prosecutor's argument deprived the defendant of fair trial include "whether the instance was singular and isolated, whether the district court instructed the jury that the attorneys' argument was not evidence, and whether there was substantial evidence of the defendant's guilt." *Id.*

The prosecutor's appeal to the jurors' "common sense" was not improper. Jurors are permitted to use their common sense to evaluate the evidence. *Webb v. United States*, 347 F.2d 363, 364 (10th Cir. 1965) ("[T]he jury's function [in a criminal case] is broad enough to allow it to make common sense inferences from proven facts . . . ."); *see also United States v. Durham*, 211 F.3d 437, 441 (7th Cir. 2000) ("[I]t is well established that juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict. While common sense is no substitute for evidence, common sense should be used to evaluate what reasonably may be inferred from circumstantial evidence.") (quotation marks omitted). Nor was the "long detour" comment inappropriate. Placed in context, it was not a personal attack on defense counsel. Rather, it was nothing more than the prosecutor's response to defense counsel's claim that the IRS's mishandling of the Clip Company and McBride's appeals negated liability on Count 5. Essentially, the prosecutor claimed any mishandling of those appeals was irrelevant to McBride's liability. Obviously, the jury did not agree because it rendered an acquittal on that count. The jury's decision reveals it not to have been improperly influenced by the comment.

The "ruse" remark was also not improper. It was made in reference to McBride attaching his Schedule K-1 to his 2005 amended return. Thus, far from attacking defense counsel personally, it was a fitting characterization of McBride's actions and an appropriate argument in response to defense counsel's claim that McBride did "report" his income on the 2005 amended return because he attached the Schedule K-1. *See United States v. Anaya*, 727 F.3d 1043, 1056 (10th Cir. 2013) ("We generally give prosecutors latitude in making closing arguments when defense counsel 'invites' the argument.").[6]

The "double ruse" remark is trickier (no pun intended). It is unclear how McBride's actions in attaching his Schedule K-1 to his amended 2005 return constitute

[6] McBride also claims the prosecutor misstated his argument concerning the 2005 amended return. According to him, he never suggested or implied that he intended to list his earnings as taxable income on the amended return but failed to do so due to inadvertence or mistake. Rather, he claimed that by attaching his Schedule K-1 to the return, he had reported his income. But the "ruse" remark was just a small portion of the prosecutor's response to defense counsel's argument concerning the amended return. That response, in its entirety, shows no misstatement:

> [W]ith respect to . . . the Amended Return that was filed by Mr. McBride, his counsel has represented that he did report his income because he attached a K-1. That's not reporting your income. A 1040 is for reporting your income. You know that, I know that. That's common sense. That's what that form is for. The K-1 is a form for Cliphanger to report the income paid to McBride. So he puts a zero on his 1040, but you can't expect the IRS to go in and take a number from . . . the K-1 and put it on a 1040. That's not the IRS's job to tamper with a return and . . . change the numbers on the return. That would be a violation of law, in fact, for the IRS to do that, and especially where he says on the K-1 that this is not income. So [the IRS is] supposed to divine that it is income when he say it's not income, [its] supposed to divine that . . . he meant to put it in the 1040 but he didn't and put it on for him. That's just a ruse . . . and in defiance of common sense.

(Supp. R. Vol. 1 at 71-72.)

two acts of trickery. And the comment was made immediately after defense counsel objected. Personal attacks on defense counsel are improper. *Stouffer v. Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013). Some might say the remark was directed at defense counsel personally. But, in truth, it was directed at counsel's argument—fair game. Moreover, it was a stray remark made in response to defense counsel's objection to which the judge cautioned the prosecutor. And it was a mere two words of a rebuttal closing argument transcript numbering almost 20 pages and of a trial transcript spanning over 700 pages.

On the other hand, the prosecutor's remarks in his rebuttal argument inviting the jurors to convict based on their pecuniary interests as taxpayers are most likely improper. *United States v. Morris*, 573 F. App'x 712, 725 (10th Cir. 2014) (unpublished) ("'Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper.'") (quoting *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007)); *see also United States v. Lopez-Medina*, 596 F.3d 716, 740 (10th Cir. 2010) ("The cardinal rule of closing argument is that counsel must confine comments to evidence in the record and to reasonable inferences from that evidence.") (quotation marks omitted). It was coupled with commentary suggesting to the jury that it had a civic duty to convict to prevent "anarchy and chaos" and other social ills. *See United States v. Rogers*, 556 F.3d 1130, 1143 (10th Cir. 2009) ("Prosecutors are not permitted to incite the passions of a jury by suggesting they can act as the community conscience to society's problems.") (quotation marks omitted); *Wilson v. Sirmons*, 536 F.3d 1064, 1120 (10th Cir. 2008) ("It is improper for a prosecutor to suggest that a jury has a civic duty to

convict.") (quotation marks omitted); *United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008) ("Appeals about the need to address societal ills speak not to the question whether the accused committed the crime alleged, but divert attention from that dispositive question and confuse the task of the jury—as finder of fact—with the task of elected officials—as the authors of social policy."); *but see Fleming*, 667 F.3d at 1104 (the restriction against inciting the passions of a jury "is balanced . . . by the acknowledgment that in an emotionally charged trial, the prosecutor's closing argument need not be confined to such detached exposition as would be appropriate in a lecture") (quotation marks omitted). That combination of argument may well have pushed the remarks over the line. But that is only the beginning, not the end, of our analysis.

Reversal is not warranted in this case. Although the judge did not specifically tell the jury to disregard the "double ruse" remark, he did warn the prosecutor to "be careful." (Supp. R. Vol. 1 at 72.) The jury likely interpreted that warning as indication the comment was inappropriate or, at the very least, close to the line. McBride did not seek further instruction to ameliorate any harm. In any event, as to any possibly improper comments, the jury was told its verdict must be based on the evidence and that the argument of counsel was not evidence.[7] We presume jurors follow their instructions.

---

[7] Before trial, the jury was told "[s]tatements, arguments, and questions by lawyers" and "[o]bjections to questions" are not evidence. (R. Vol. 1 at 249.) After the close of the evidence, the jury was again told "not to consider the opening statements and the arguments of counsel as evidence." (*Id.* at 257.) McBride argues these standard instructions did nothing to cure the misconduct in this case because they address the situation where a prosecutor attempts to fill holes in the government's case with

(Continued . . .)

- 12 -

*United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002).

Importantly, the extent of the possible misconduct was minimal. The concluding remarks were lengthy but they still spanned less than three pages of transcript. And, while the record indicates the prosecutor's rebuttal closing argument may have been scripted, there is no indication the "double ruse" comment was anything other than a spontaneous, off-the-cuff remark to defense counsel's objection. *Lopez-Medina*, 596 F.3d at 740 ("We have often held that a stray improper remark in closing is no basis for upsetting a trial and requiring the parties and district court to redo their ordeal.") (quotation marks omitted).

The role of the claimed misconduct at trial was negligible. The concluding remarks, even if technically inappropriate, merely stated the obvious—that tax revenues are used to fund public services and if an individual ignores his responsibility to pay his taxes the burden to fund those services falls on those who do. *See Morris*, 573 F. App'x at 725 (no plain error where prosecutor argued that when the defendant stole from the IRS, it stole from the jury; "[i]t would surprise no jury to learn that IRS refunds consist of taxpayer dollars—and that fraudulently obtaining refunds depletes tax revenues"). They were also interspersed with proper argument, weakening their improper effect.[8] In any

---

argument. He says the problem in this case is that "the prosecutor's remarks teach the jury that defense counsel is a liar and the defendant a threat to the very fabric of the nation." (Appellant's Reply Br. at 19.) We disagree. The standard instructions told the jury that its verdict cannot be based on the prosecutor's argument, improper or not.

[8] The evidence and the reasonable inferences from that evidence demonstrated McBride "earned millions of dollars," "decided to pick up the bogus philosophy to try to

(Continued . . .)

- 13 -

event, there is no indication the jury convicted McBride based on these comments (or, for that matter, the "double ruse" remark or the combination of both), as opposed to the evidence. Indeed, had the comments so inflamed the passions of the jury, it seems unlikely it would have acquitted on Count 5.

Finally, the evidence at trial overwhelmingly established McBride's guilt. As to Count 1, he reported zero income on his 2005 amended return even though the Schedule K-1 he received from The Clip Company for 2005 (and which he attached to the amended return) showed that was not true. With regard to Counts 2-4, the evidence revealed he (1) earned over $400,000 from The Clip Company and Cliphanger from 2006 to 2009, (2) netted substantial proceeds from the sale of his vacation home, and (3) received over $27,000 in retirement distributions. Yet, he reported none of it to the IRS. And although McBride testified he sincerely believed these things were not income and therefore not subject to tax, there was ample other evidence demonstrating this belief was not sincere but rather a convenient theory he adopted to avoid paying taxes. Or the jury could have simply disbelieved him. *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001) ("It is left to the jury to weigh conflicting evidence and to consider the credibility of witnesses.") (quotation marks omitted).

McBride's arguments are unconvincing, not to mention damning in the

---

save what he had left," "placed himself above [paying taxes]," "stands in opposition to the rule of law" and "[didn't] like to pay taxes, [so he] adopt[ed] the belief that earnings are not income and hope[d] to fool people into thinking [he's] acting in good faith." (Supp. R. Vol. 1 at 87-88.)

desperation they reveal.  He claims the prejudice resulting from the "double ruse" and concluding remarks was exacerbated by the fact they were made by a prosecutor, whose opinions carry the imprimatur of the government, in rebuttal closing argument, the last thing the jury heard before beginning its deliberations and at a time when he no longer could respond.  He also claims the judge "compound[ed] the prosecutorial impropriety with judicial imprimatur" by not taking curative action.  (Appellant's Op. Br. at 25.)  But our review of prosecutorial misconduct obviously accounts for the fact it occurs at the hands of the prosecutor.  Similarly, our abuse of discretion standard of review accounts for the fact that judges may sometimes (and properly) leave prosecutorial misconduct uncorrected.  Finally, the context in which prosecutorial misconduct occurs is important and has been considered in this case.  But reversal is only required if that misconduct deprived McBride of a fair trial.  While it may not have been perfect, it was abundantly fair.  *United States v. Brooks*, 727 F.3d 1291, 1307 (10th Cir. 2013) ("It is a well-settled principle that a litigant is entitled to a fair trial, albeit not a perfect one.") (quotation marks omitted).

      **AFFIRMED**.

                                        **Entered by the Court:**

                                        **Terrence L. O'Brien**
United States Circuit Judge